IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDDIE BARTON,

    Petitioner,

  v.

KATHY MENDOZA-POWERS, Warden,

    Respondent.
_____/

No. 07-CV-00258 CW

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

On February 16, 2007, Petitioner Eddie Barton, proceeding pro se, filed a petition for a writ of habeas corpus pursuant to title 28 U.S.C § 2254, challenging as a violation of his constitutional rights the August 22, 2005 decision of the California Board of Parole Hearings (Board)[1] denying him parole for three years.

On March 11, 2008, Respondent filed an answer. On April 3, 2008, Petitioner filed a traverse. Having considered all of the papers filed by the parties, the Court DENIES the petition.

BACKGROUND

I. Commitment Offense

The California court of appeal, in affirming Petitioner's convictions, described the commitment offense as follows:

> Around 11 p.m. on December 13, 1991, Kenneth Keziah was walking in the Hillcrest area of San Diego when he noticed two men leaning against the side of a building.

---

[1]Formerly known as the Board of Prison Terms.

The area was well lit and Keziah had no problem seeing them.  Both men wore jeans and boots and both had very short hair.  One of the men wore a red and black flannel shirt and the other wore a blue flannel shirt.

The two men approached Keziah and asked him if he wanted to go home with them.  When Keziah declined the invitation, the man in the red and black shirt, later identified as Barton, grabbed Keziah and said, "What? We're not good enough for you?"  He then hit Keziah in the face, breaking his nose. . . .

A short time after the attack on Keziah, Bryan Baird, John Wear and Jacob Isaacsen were walking in the same area of Hillcrest when they saw two men approach. As the two groups passed, Baird said, "Hey, how's it going?"  One of the men, later identified as Barton, immediately hit Baird in the mouth.  [The other attacker, DiPaolo] grabbed Wear, struggled with him and began punching him while he was on the ground.  Barton joined in the attack on Wear, punching and kicking him and yelling, "Don't cry faggot."  He then pulled out a knife and fatally stabbed Wear in the stomach.

. . .

Barton then threatened Baird with the knife.  As Baird crouched down to protect himself, Barton struck and kicked him in the back and cut him on his head. According to a man who witnessed the crimes from his nearby balcony, the attackers took their time, stopped only after they were finished and casually strolled away.

The next day, Barton visited Timothy Carosella. Di Paolo was also there.  Barton told Carosella he had robbed a porno shop in Hillcrest the night before. Barton and Di Paolo bragged that they also had beaten up a homosexual in Hillcrest.  A few days later, after Carosella learned a young man had died in Hillcrest, Barton admitted he had killed Wear and needed to get out of town.

. . .

At trial, Barton's defense was misidentification. He claimed the description of the perpetrator was that of a skinhead, specifically Anthony Giacalone.  He also asserted an alibi defense, claiming he and two friends were at his sister's house the night before watching a boxing match on cable television.  However, Barton's sister told police Barton was not at her house that night and she did not have cable television.

2

People v. Barton, No. D-026470, slip op. at 4-5 (Cal. Ct. App. 1998).

On June 14, 1993, a jury convicted Petitioner of one count of second degree murder, one count of assault with a deadly weapon, and one count of battery with serious injury, and he was sentenced to twenty-one years to life in state prison. Id. at 2. After a series of appeals, the judgment was modified to reflect a total aggregate sentence of twenty years to life in prison. Id. at 30. The California Department of Corrections and Rehabilitation (CDCR) calculated Petitioner's minimum eligible parole date as January 6, 2006. (Pet'r Ex. 2, 2005 Parole Bd. Hr'g, at 1.)

During his incarceration at Avenal State Prison, Petitioner received three 115 Rule Violation Reports[2] for inmate misconduct—one in 1995 for possession of inmate manufactured alcohol, one in 1997 for participation in a work stoppage, and the most recent in 2001 for attempt to smuggle escape paraphernalia (a map). (Pet'r Ex. 5, Psychological Eval. at 5.) Petitioner also received four 128A counseling chronos, all between 1994 and 1995. (Id.)

Petitioner has completed various vocational courses, therapy, and self-help activities in prison, including Alcoholics Anonymous and Narcotics Anonymous. (Id.) He received certificates of appreciation for his work with the Youth-Adult Awareness Program (YAAP), and other community service programs, obtained his General

---

[2] 115 and 128A refer to different forms used by prison officials to report rules violations. Prison staff use a CDC-128-A form to document repeated minor misconduct and a CDC-115 form for misconduct that is not minor or is believed to violate the law. Cal. Code Regs., tit. 15 § 3312(a).

3

Education Development (GED) credential, and received excellent work performance reports. (Id. at 6.)

II. Parole Hearing

On August 22, 2005, Petitioner attended his first parole suitability hearing before the Board. (Pet'r Ex. 2) In making its decision, the Board considered the nature of Petitioner's underlying offense, including the facts that multiple victims were involved, that the crime was carried out in a dispassionate and calculated manner and in a manner which demonstrated an exceptionally callous disregard for human suffering, and that the motive for the crime was "very trivial" in relation to the offense. (Id. at 59.) After being asked to speak about the impact his crime had on the Hillcrest community, Petitioner stated that he knew the crime had caused fear and confusion. (Id. at 54.) The Board concluded that this was not an adequate understanding of the gravity of the offense, especially in terms of the impact it had on the gay community. (Id. at 55-56.)

The Board also reviewed Petitioner's personal background as well as his previous criminal record, noting that he had no prior criminal record as an adult but had a substantial juvenile record including offenses related to marijuana, alcohol, and theft, which indicated an escalating pattern of criminal conduct culminating in the current commitment offense. (Id. at 62.)

The Board considered Petitioner's psychological evaluation, dated March 8, 2005, which concluded that he presented a moderately low to moderate risk of future violence if released into the community. (Id. at 70.) Opposition to Petitioner's parole from law enforcement was also noted. (Id. at 66.)

4

Referring to Petitioner's institutional behavior, the Board noted Petitioner's seven negative prison citations as well as his exemplary participation in vocational training, self-help, and programming. (Id. at 67-68.)  The Board also considered Petitioner's plans for parole, which it stated seemed realistic, in that he had letters offering employment, a place to stay if paroled, and many letters of support from family and friends. (Id. at 63-64.)

After deliberation, the Board concluded that Petitioner was not suitable for parole and that the positive aspects of his behavior did not outweigh the factors of unsuitability and issued a three-year denial of parole. (Id. at 68.)  The Board recommended that Petitioner continue therapy and vocational programs, avoid behavioral citations, and obtain positive marketable skills, but emphasized that the particular nature of the crime and the psychological evaluation were not supportive of release. (Id. at 67-69.)  The Board also stated that Petitioner's lack of insight into the gravity of the offense he had committed and the impact it had on the Wear family and the Hillcrest community supported a denial of parole. (Id.)

Petitioner filed a petition for a writ of habeas corpus with the San Diego County superior court challenging the Board's decision.  On March 12, 2006, the superior court, in a written decision, denied the petition.  On June 30, 2006, the California court of appeal, in a brief decision, denied his petition.  The court of appeal found that Petitioner's crimes were "callous, cruel and inexplicable," refuting Petitioner's claims that the Board mis-

5

characterized the offense.  In re Barton, No. D-048475, slip op. at 2 (Cal. Ct. App. 2006).  The court also found that the Board relied on factors other than the commitment offense for its denial of parole: "The Board also noted Barton minimized both the impact of the crime and his juvenile record.  The record shows Barton did not begin to work on his alcohol abuse problem until 2001 and he had disciplinary findings for possession of inmate-manufactured alcohol in 1995 and possession of escape paraphernalia in 2001.  The Board's decision is supported by the evidence."  Id.

On September 13, 2006, the California Supreme Court summarily denied his petition for review.  Petitioner now seeks federal habeas relief in this Court.

## LEGAL STANDARD

This Court may entertain a petition for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

Because this case involves a federal habeas corpus challenge to a state parole eligibility decision, the applicable standard is contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002).  Under AEDPA, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

6

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).  A federal court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" Supreme Court authority and falls under the first clause of § 22554(d)(1) only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 412-13.  A state court decision is an "unreasonable application" of Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979).  However, if a state's statutory parole scheme uses mandatory language, it may create a presumption that parole release will be granted when or unless certain designated filings are made, and thereby give rise to a constitutionally protected liberty interest.  Id. at 11-12.  In Greenholtz, the Supreme Court held that the Nebraska parole statute providing that the board "shall" release prisoners, subject to certain restrictions, creates a due process liberty interest in release on parole.  Id.  In such a

7

case, a prisoner gains a legitimate expectation of parole that cannot be denied without adequate procedural due process protections. See Bd. of Pardons v. Allen, 482 U.S. 369, 373-81 (1987); Greenholtz, 442 U.S. at 11-16.

California's parole scheme uses mandatory language:

> The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

Cal. Penal Code § 3041(b). Accordingly, under the clearly established framework of Greenholtz and Allen, "California's parole scheme gives rise to a cognizable liberty interest in release on parole. The scheme creates a presumption that parole release will be granted unless the statutorily defined determinations are made." McQuillion, 306 F.3d at 902.

Respondent concedes that Petitioner has exhausted his state remedies by filing a petition for review in the California Supreme Court. Where, as here, the highest state court to reach the merits issued a summary opinion which does not explain the rationale of the decision, federal court review under § 2254(d) is of the last state court opinion to reach the merits. Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of Petitioner's claim is the opinion of the California court of appeal.

## DISCUSSION

Petitioner claims that the failure of the Board to meet the

8

"some evidence" standard has resulted in a violation of his due process rights. Specifically, Petitioner contends that the Board placed undue weight on the unchanging factor of the gravity of his commitment offense, without supporting the decision with any post-conviction evidence. He also contends that the Board denied him a fair hearing by misconstruing some facts, violating the "spirit and intent" of the Indeterminate Sentencing Act, and violating its own administrative decision-making process. Petitioner's claims fail.

The Supreme Court has established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." Sass, 461 F.3d at 1128 (citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)). The "some evidence" standard used for disciplinary hearings as identified in Hill is clearly established federal law in the parole context for AEDPA purposes. McQuillion, 306 F.3d at 904. In addition, the evidence underlying the Board's decision must have "some indicia of reliability." Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987). It is within the Board's discretion to decide how to resolve conflicts in the evidence and to decide how much weight to give each factor. In re Rosenkrantz, 29 Cal. 4th 616, 656, 677 (2002).

When assessing whether a state parole board's suitability determination was supported by "some evidence," the district court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. Sass, 461 F.3d at 1128. Accordingly, in California, the district court must look to California law to determine what findings are necessary to deem a

9

prisoner unsuitable for parole, and then must review the state court record in order to determine whether the holding that the Board's findings were supported by "some evidence" constituted an unreasonable application of the principle articulated in Hill, 472 U.S. at 454.  Irons v. Carey, 479 F.3d 658, 662-64 (9th Cir. 2007).

The California Supreme Court summarized the standards which the Board must use in determining whether a prisoner is suitable for parole.

> [C]ircumstances tending to establish unsuitability for parole are that the prisoner: (1) committed the offense in an especially heinous, atrocious, or cruel manner; (2) possesses a previous record of violence; (3) has an unstable social history; (4) previously has sexually assaulted another individual in a sadistic manner; (5) has a lengthy history of severe mental problems related to the offense; and (6) has engaged in serious misconduct while in prison.  Cal. Code Regs., tit. 15, § 2402(c).
>
> The regulation further provides that circumstances tending to establish suitability for parole are that the prisoner: (1) does not possess a record of violent crime committed while a juvenile; (2) has a stable social history; (3) has shown signs of remorse; (4) committed the crime as the result of significant stress in his life, especially if the stress has built over a long period of time; (5) committed the criminal offense as a result of battered woman syndrome; (6) lacks any significant history of violent crime; (7) is of an age that reduces the probability of recidivism; (8) has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) has engaged in institutional activities that indicate an enhanced ability to function within the law upon release.  Cal. Code Regs., tit. 15, § 2402(d).

In re Rosenkrantz, 29 Cal. 4th at 653-54.  The California Supreme Court further explained,

> Factors that support a finding that the prisoner committed the offense in an especially heinous, atrocious, or cruel manner include the following: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was

10

>carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled, or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense.

Id. at 654 n.11.

Petitioner argues that the facts of his crime are less heinous than the facts in other cases in which the nature of the commitment offense was found to be "exceptionally callous" and yet were inadequate to provide the sole basis for "some evidence" of present dangerousness. This argument fails. Petitioner's conclusion that his crime is less predictive of dangerousness than the crimes he cites is a factual determination, and this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1). The Board considered the above factors in determining that the crime was especially heinous, concluding that Petitioner's crime satisfied all five, and the state court reviewed this finding. (Pet'r Ex. 2 at 59.)

In addition, Petitioner's comparisons to other crimes are not indicative that there was not some evidence to support the Board's decision, because the nature of the commitment offense did not provide the sole basis for the Board's decision. As the state court found, the Board considered all of the applicable factors regarding suitability for parole as provided by state law in California Code of Regulations, title 15, Section 2402(c). As stated above, the Board considered the "especially heinous" nature of the commitment offense which satisfied all five factors that support a finding that the prisoner committed the offense in such a

11

manner. The Board also considered Petitioner's lack of insight into the impact of the crime, his previous criminal record, parole plans, conduct while in prison (both positive and negative), and psychological factors. Petitioner claims that some of the factors applicable to the Board's decision, such as a stable social history, plans for parole, and "no juvenile record," support a finding that he is suitable for parole. However, the fact that some factors support suitability for parole is not determinative. Based on the above, the state court's finding that there is "some evidence" in the record to support the Board's denial of parole is not contrary to or an unreasonable application of the principle articulated in Hill, 472 U.S. at 454.

Furthermore, the nature of the underlying commitment offense may provide the basis for "some evidence" as long as the parole board has given due consideration to all applicable factors regarding suitability for parole, and the circumstances of the commitment offense reasonably could be considered more aggravated or more violent than the minimum necessary to sustain a conviction for the offense. In re Rosenkrantz, 29 Cal. 4th at 677-78, 682-83. Because it is an unchanging factor, the district court may find there has been a violation of due process if the Board has continually relied on the prisoner's commitment offense over the course of many parole hearings. Biggs 334 F.3d at 916-17. In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that "[o]ver time . . . , should Biggs continue to demonstrate exemplary

12

behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole." Id. In Irons, the Ninth Circuit noted that in all cases in which it held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the prisoner had served the minimum number of years required by his sentence. Irons, 479 F.3d at 665. It should be noted that this was Petitioner's first parole hearing and that he had only served twelve years out of a sentence with a minimum term of twenty years. If, over time, the Board repeatedly denies parole based solely on the commitment offense, this may eventually constitute a due process violation.

Petitioner also claims that the Board mis-characterized him as a "skin head" and mis-characterized his offense when considering the applicable factors. Petitioner contends that these factual determinations by the Board violated the Board's administrative process as set forth in California Penal Code Section 3041 and the "spirit and intent" of California's Indeterminate Sentencing Act, and, therefore, Petitioner's due process rights. The California court of appeal found that Petitioner "was not characterized as a 'skinhead' by the Board; any reference was the result of Barton's admissions and the facts of the crime." In re Barton, No. D-048475, slip op. at 2. Again, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e).

13

1   The court of appeal's decision did not address Petitioner's
2 claim that the Board's decision violated the "spirit and intent" of
3 the Indeterminate Sentencing Act, but this claim is not subject to
4 federal habeas review.  Petitioner may not transform a state-law
5 issue into a federal one merely by asserting a violation of due
6 process.  Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).
7 This Court accepts a state court's interpretation of state law, and
8 alleged errors in the application of state law are not cognizable
9 in federal habeas corpus review unless they impact federal rights.
10 Id.
11   The state court applied the proper test under the Fifth and
12 Fourteenth Amendments in finding that the Board's decision was
13 supported by some evidence in the record.  See Hill, 472 U.S. at
14 457.  The state court's denial of Petitioner's petition was not
15 contrary to, or an unreasonable application of, controlling federal
16 law, nor based on an unreasonable determination of facts.  See 28
17 U.S.C. § 2254(d).  Accordingly, Petitioner's due process claims are
18 DENIED.

CONCLUSION

20   For the foregoing reasons, the petition for a writ of habeas
21 corpus is DENIED.  The Clerk of the Court shall enter judgment and
22 close the file.
23   IT IS SO ORDERED.

Dated: 7/23/09

_____
CLAUDIA WILKEN
United States District Judge

14